**No. 26-7139**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

CALIFORNIA NURSES ASSOCIATION, *et al.*,

Plaintiffs-Appellees,

v.

MARKWAYNE MULLIN, *et al.*,

Defendants-Appellants.

---

On Appeal from the United States District
Court for the Northern District of California

---

**BRIEF OF AMICI CURIAE NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, AND ASIAN AMERICAN LEGAL DEFENSE FUND IN SUPPORT OF PLAINTIFFS-APPELLEES AND IN OPPOSITION TO MOTION FOR STAY PENDING APPEAL**

---

STUART NAIFEH
JOHN CUSICK
BRITTANY CARTER
NAACP Legal Defense &
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
snaifeh@naacpldf.org
(202) 965-2200

MAX L. MEYERS
National Association for the
Advancement of Colored People
4805 Mt. Hope Drive
Baltimore, MD 20215
(410) 580-5777

ANUJA D. THATTE
DEUEL ROSS
HAYLEY HAHN
VICTOR OLOFIN
NAACP Legal Defense &
Educational Fund, Inc.
700 14th St. N.W.
Ste. 600
Washington, DC 20005

LEAH WONG
PATRICK STEGEMOELLER
Asian American Legal Defense
and Education Fund
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932

***Counsel for amici curiae***

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 34. Disclosure Statement under FRAP 26.1 and Circuit Rule 26.1-1

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form34instructions.pdf*

**9th Cir. Case Number(s)** 26-7139

Name(s) of party/parties, prospective intervenor(s), or amicus/amici filing this form:

NAACP Legal Defense & Educational Fund, Inc.
Asian American Legal Defense & Educational Fund
The National Association for the Advancement of Colored People

Under FRAP 26.1 and Circuit Rule 26.1-1, I make the following disclosures:

1. I disclose the following information required by FRAP 26.1(a) and/or Circuit Rule 26.1-1(b) for any nongovernmental corporation, association, joint venture, partnership, limited liability company, or similar entity[1] which is a party, prospective intervenor, or amicus curiae in any proceeding, or which the government identifies as an organizational victim below in section 2 of this form,[2] or which is a debtor as disclosed below in section 3 of this form.

   a. Does the party, prospective intervenor, amicus, victim, or debtor have any parent companies? Parent companies include all companies that control the entity directly or indirectly through intermediaries.
   ○ Yes ◉ No

   If yes, identify all parent corporations of each entity, including all generations of parent corporations *(attach additional pages as necessary)*:

   b. Is 10% or more of the stock of the party, prospective intervenor, amicus, victim, or debtor owned by a publicly held corporation or other publicly held entity?
   ○ Yes ◉ No

[1] A corporate entity must be identified by its full corporate name as registered with a secretary of state's office and, if its stock is publicly listed, its stock symbol or "ticker."
[2] To the extent it can be obtained through due diligence.

If yes, identify all such owners for each entity *(attach additional pages as necessary)*:

| |
|---|
| |

2. In a criminal case, absent good cause shown, the government must identify here any organizational victim of the alleged criminal activity:

| |
|---|
| N/A |

3. In a bankruptcy case, the debtor, the trustee, or, if neither is a party, the appellant must identify here each debtor not named in the court of appeals caption:

| |
|---|
| N/A |

4. Are you aware of any judge serving on this Court who participated at any stage of the case, either in district court, administrative proceedings, or in related state court proceedings?
   ○ Yes ◉ No

   If yes, list the name of the judge and the case name, case number, and name of court of the related proceedings:

| |
|---|
| |

I certify that *(select only one)*:

◉ this is the first disclosure statement filed in the above-referenced case by the above-identified party/parties, prospective intervenor(s), or amicus/amici, and this disclosure statement complies with FRAP 26.1 and Circuit Rule 26.1-1.

○ the party/parties, prospective intervenor(s), or amicus/amici submitting this supplemental disclosure statement has previously filed a compliant disclosure statement in this case, and this updated disclosure statement discloses changed or additional information.

○ I have reviewed this form, FRAP 26.1, and Circuit Rule 26.1-1 and, to the best of my knowledge, have no information to disclose at this time.

**Signature** s/Stuart Naifeh **Date** 10/28/2026
*(use "s/[typed name]" to sign electronically-filed documents)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

INTEREST OF AMICI CURIAE ........ 1

I. The Text, Structure, and History of the Voting Rights Act All Confirm that Section 11(b) Must be Enforceable by Private Parties. ........ 2

A. Section 11(b) Contains "Rights-Creating" Language. ........ 2

B. The Structure and History of the Voting Rights Act Reinforce that Congress Manifestly Intended to Create a Private Right of Action for Section 11(b). ........ 3

II. Longstanding Precedent from the Supreme Court and this Court Reinforces the Existence of a Private Right of Action for Section 11(b). ........ 7

CONCLUSION ........ 9

CERTIFICATE OF SERVICE ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018) .......... 10

*Abrams v. Johnson*,
521 U.S. 74 (1997) .......... 10

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .......... 3

*Allen v. Milligan*,
599 U.S. 1 (2023) .......... 6, 8, 9, 10

*Allen v. State Bd. of Elections*,
393 U.S. 544 (1969) .......... 7, 8, 9

*Brnovich v. DNC*,
594 U.S. 647 (2021) .......... 10

*Bush v. Vera*,
517 U.S. 952 (1996) .......... 10

*Chinese for Affirmative Action v. Leguennec*,
580 F.2d 1006 (9th Cir. 1978) .......... 10

*City of Boerne v. Flores*,
521 U.S. 507 (1997) .......... 6

*Cooper v. Harris*,
581 U.S. 285 (2017) .......... 10

*Farrakhan v. Washington*,
338 F.3d 1009 (9th Cir. 2003) .......... 10

*Growe v. Emison*,
507 U.S. 25 (1993) .......... 10

*Health & Hosp. Corp. Of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023) .......... 5, 9

*Holder v. Hall*,
512 U.S. 874 (1994) .......... 10

*Johnson v. De Grandy*,
512 U.S. 997 (1994) .......... 10

*Katzenbach v. Original Knights of Ku Klux Klan*,
250 F. Supp. 330 (E.D. La. 1965) .......... 5, 6

*Krabach v. King Cnty.*,
No. 2:22-CV-1252, 2023 WL 7018431 (W.D. Wash. Oct. 25, 2023) .......... 4

*Louisiana v. Callais*,
608 U.S. 85 (2026) .......... 10

*LULAC v. Perry*,
548 U.S. 399 (2006) .......... 10

*Mich. Welfare Rts. Org. v. Trump*,
600 F. Supp. 3d 85 (D.D.C. 2022) .......... 4

*Milligan v. Merrill*,
582 F. Supp. 3d 924 (N.D. Ala. 2022), *aff'd sub nom. Allen v. Milligan*, 599 U.S. 1 (2023) .......... 10

*Morse v. Republican Party of Va.*,
517 U.S. 186 (1996) .......... *passim*

*Nat'l Coal. for Black Political Participation v. Wohl*,
661 F. Supp. 3d 78 (S.D.N.Y. 2023) .......... 6

*Nat'l Coal. on Black Civic Participation v. Wohl*,
512 F. Supp. 3d 500 (S.D.N.Y. 2021) .......... 5

*Nev. Dep't of Hum. Res. v. Hibbs*,
538 U.S. 721 (2003) .......... 6

*Old Person v.* Cooney;
230 F.3d 1113 (9th Cir. 2000) .......... 10

*Oregon v. Mitchell*,
400 U.S. 112 (1970) .......... 6

*Ruiz v. City of Santa Maria*,
160 F.3d 543 (9th Cir. 1998) (per curiam) .......................................................10

*Shaw v. Hunt*,
517 U.S. 89 (1996).........................................................................................10

*Tennessee v. Lane*,
541 U.S. 509 (2004)...........................................................................................6

*Thornburg v. Gingles*,
478 U.S. 30 (1986)..........................................................................................10

*United States v. Clark*,
249 F. Supp. 720 (S.D. Ala. 1965) ....................................................................5

*Voinovich v. Quilter*,
507 U.S. 146 (1993).........................................................................................10

*Wis. Legislature v. Wis. Elections Comm'n*,
595 U.S. 398 (2022)...........................................................................................10

**Statutes**

52 U.S.C. § 10302..................................................................................................2

52 U.S.C. § 10302(a), (c)........................................................................................4

52 U.S.C. § 10307(b) .........................................................................................2, 3

52 U.S.C. § 10308(f)................................................................................................7

52 U.S.C. § 10310(c)(1)............................................................................................3

52 U.S.C. § 10310(e) ................................................................................................7

52 U.S.C. § 10101(b) ................................................................................................6

**Other Authorities**

H.R. Rep. No. 89-439 (1965)....................................................................................6

S. Rep. No. 94-295, at 40 (1975), *as reprinted in* 1975 U.S.C.C.A.N.
774, 806-07 ..............................................................................................................4

S. Rep. No. 94-295, at 40, *as reprinted in* 1975 U.S.C.C.A.N. 774, 807 ........ 4

U.S. Comm'n for Civil Rights, *Voting* 100 (1961) ........ 8

## INTEREST OF AMICI CURIAE[1]

**The NAACP Legal Defense and Educational Fund, Inc. ("LDF")** is the nation's first and foremost civil rights organization. Since its founding in 1940, LDF has fought to secure equal justice under the law for all Americans, and to break down barriers that prevent Black Americans from realizing their basic civil and human rights. Through litigation, advocacy, and public education, LDF strives to enforce the United States Constitution's promise of equal protection and due process for all. LDF is committed to ensuring a faithful interpretation of federal voting laws and protecting the right of every eligible Black American to cast a ballot that counts.

LDF has participated as counsel of record in numerous significant cases to defend voting rights. *See, e.g.*, *Louisiana v. Callais*, 608 U.S. 85 (2026); *Alexander v. South Carolina State Conf. of the NAACP*, 602 U.S. 1 (2024); *Allen v. Milligan*, 599 U.S. 1 (2023); *Buck v. Davis*, 580 U.S. 100 (2017); *Shelby Cnty. v. Holder*, 570 U.S. 529 (2013); *Nw. Austin Mun. Dist. No. 1 v. Holder*, 557 U.S. 193 (2009); *Chisom v. Roemer*, 501 U.S. 380 (1991); *Thornburg v. Gingles*, 478 U.S. 30 (1986); *City of Mobile v. Bolden*, 446 U.S. 55 (1980); *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969).

[1] Pursuant to Federal Rule of Appellate Procedure 29, amici certify that no counsel for any party authored this brief in whole or in part, no party or party's counsel made a monetary contribution to fund its preparation or submission, and no person other than amicus or its counsel made such a monetary contribution. Counsel for all parties has consented to the filing of this brief.

**AALDEF** is a national organization, founded in 1974, that protects and promotes the civil rights of Asian Americans. By combining litigation, advocacy, education, and organizing, AALDEF focuses on critical issues affecting Asian Americans, including the right of Asian American communities across the country to cast an effective ballot and receive fair representation. AALDEF has litigated cases seeking to protect the ability of Asian American communities to elect candidates of their choice, *see, e.g., N.Y. Cmtys. for Change v. Cnty. of Nassau,* No. 602316/2024 (Sup. Ct., Nassau Cty. Feb. 7, 2024); *League of United Latin Am. Citizens v. Abbott*, No. 3:21-cv-00259-DCG-JESJVB (W.D. Tex. Oct. 18, 2021); *Favors v. Cuomo*, 881 F. Supp. 2d 356 (E.D.N.Y. 2012), and to ensure that limited English proficiency Asian American voters have an equal opportunity to participate in our democracy, *see, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017); *Detroit Action v. City of Hamtramck*, No. 2:21-cv11315-MAG-KGA (E.D. Mich. June 3, 2021); *All. of South Asian Am. Labor v. Bd. of Elections in the City of N.Y.*, No. 1:13-cv03732-RJD-JMA (E.D.N.Y. July 2, 2013). Each year, AALDEF monitors elections alongside local community partners across multiple states, ensuring compliance with state and federal law, and documenting obstacles facing Asian American voters. A hallmark of AALDEF's election protection work is ensuring that its community partners are able to safely and confidently participate

in elections, from voter registration all the way through the completion of the electoral process.

**The National Association for the Advancement of Colored People ("NAACP")** is the oldest and largest civil rights organization in the country. Its mission is to achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color. The NAACP has been at the forefront of fighting racial discrimination in voting and fighting for the rights of its members and those of all registered US citizens to cast ballots and have those ballots counted. This includes fighting legal battles against intimidation, threats, and coercion attempting to suppress the vote. The NAACP is currently litigating a case brought under Section 11(b) of the Voting Rights Act (see *NAACP v. Blanche* 1:26-cv-3626 D.D.C).

Amici curiae have a strong interest in the fair application of Section 11(b) of the Voting Rights Act. Amici submit that their experience and knowledge will assist the Court in this case.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Section 11(b) of the Voting Rights Act of 1965 (the "VRA") has long prohibited both actual and attempted intimidation, threats, and coercion of voters or of anyone who assists or encourages voters. 52 U.S.C. § 10307(b) ("Section 11(b)"). Tellingly, Section 11(b) does not require that such unlawful conduct ultimately prevent a voter from casting a ballot. Nor does it require a specific intent to intimidate. Congress wrote the provision broadly: to protect the fundamental right of voters to cast their ballots safely and without fear.

Consistent with its broad congressional purpose, Section 11(b) also provides a private right of action to enforce this sacred guarantee. Section 11(b) contains "rights-creating" language centered on the right of voters and those who assist voters to be free from intimidation and other unlawful pressures. The structure and history of the VRA confirms the private enforceability of this provision, including that Section 11(b) was expressly enacted as part of the Congress's authority to enforce the Fourteenth and Fifteenth Amendments. This is consistent with the text of the VRA, 52 U.S.C. § 10302, and the Supreme Court's longstanding precedent confirming a private right of action for the VRA to enforce the guarantees of the Reconstruction Amendments. *See, e.g.*, *Morse v. Republican Party of Va.*, 517 U.S. 186 (1996). This Court should continue to give vitality to Congress's clear intent to ensure a private right of action for Section 11(b) here.

## I. The Text, Structure, and History of the Voting Rights Act All Confirm that Section 11(b) Must be Enforceable by Private Parties.

To evaluate the existence of a private right of action, courts consider: (1) whether the statute includes "rights-creating language"; and, if so, (2) whether Congress "manifest[ed] an intent to create a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 288-89 (2001). Section 11(b) readily satisfies both inquiries.

### A. Section 11(b) Contains "Rights-Creating" Language.

As an initial matter, Section 11(b) contains "rights-creating" language. By its plain text, Section 11(b) provides that no one "shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote," "any person for urging or aiding any person to vote or attempt to vote," or "any person for exercising any powers or duties under" certain other provisions of the VRA. 52 U.S.C. § 10307(b). In other words, Section 11(b) guarantees *individuals* the right to be free from intimidation, threats, and coercion in voting. Section 11(b) also incorporates the broad definitions of "vote" and "voting" in the VRA, which defines voting as any "action necessary to make a vote effective," 52 U.S.C. § 10310(c)(1). This means that Section 11(b) is centered on the right of those individuals taking "all action necessary to make a vote effective." 52 U.S.C. § 10310(c)(1); *see Health & Hosp. Corp. Of Marion Cnty. v. Talevski*, 599 U.S. 166, 184 (2023) (statute about the "rights" of an identified group of nursing home "residents" contained necessary rights-creating language).

### B. The Structure and History of the Voting Rights Act Reinforce that Congress Manifestly Intended to Create a Private Right of Action for Section 11(b).

The structure of the VRA—as well as its historical backdrop and that of Section 11(b) more specifically—only reinforces Congress's manifest intent to create a private right of action for Section 11(b).

As an initial matter, Section 3 of the VRA provides for certain remedies in cases not only brought by the Attorney General but also an "*aggrieved person* . . . under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10302(a), (c) (emphasis added); *see also* S. Rep. No. 94-295, at 40 (1975), *as reprinted in* 1975 U.S.C.C.A.N. 774, 806-07 ("An 'aggrieved person' . . . may be an individual or an organization representing the interests of injured persons."). As Congress explained when it amended and extended the VRA in 1975, this structure ensures "a dual enforcement mechanism" that has "given enforcement responsibility to a governmental agency, and . . . has also provided remedies to private persons acting as a class or on their own behalf." S. Rep. No. 94-295, at 40, *as reprinted in* 1975 U.S.C.C.A.N. 774, 807. This confirms Congress's express intent to ensure private enforcement of guarantees of the Reconstruction Amendments, including under Section 11(b).[2] *See Morse*, 517 U.S. at 233-34.

[2] *See, e.g.*, *Mich. Welfare Rts. Org. v. Trump*, 600 F. Supp. 3d 85, 105-106 (D.D.C. 2022) (Section 11(b) is a "statute designed for enforcement of the guarantees of the Fourteenth and Fifteenth Amendments") (citation omitted); *see also, e.g.*, *Krabach*

Recognizing thus that there must be a private right of action for actions enforcing the Fourteenth and Fifteenth Amendments, Defendants nonetheless suggest that Section 11(b) is "not based on these provisions" since it "requires no showing of discriminatory or race-based intent." Def.'s App. Br. at 18-19. This argument has no merit—and in fact, only confirms the existence of a private right of action for Section 11(b).

The entire reason why Section 11(b) was enacted—and so written to broadly prohibit all forms of intimidation, threats, and coercion in voting—was to address ignominious efforts to deter Black voters in accessing their constitutional right to the franchise that had been guaranteed through Reconstruction. As explained in one of the earliest Section 11(b) cases, *United States v. Clark*, "the right of qualified Negroes to register to vote is guaranteed by the Fifteenth Amendment," and, under Section 11(b), "any intimidation or attempts to intimidate any person for the purpose of interfering with this right to register to vote is prohibited." 249 F. Supp. 720, 727 (S.D. Ala. 1965); *see also, e.g.*, *Katzenbach v. Original Knights of Ku Klux Klan*,

---

*v. King Cnty.*, No. 2:22-CV-1252, 2023 WL 7018431, at *3 (W.D. Wash. Oct. 25, 2023) (collecting cases); *Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 509 (S.D.N.Y. 2021) ("[T]his statute sweeps broadly in accordance with Congress's goal of realizing, enforcing, and protecting the Fifteenth Amendment's right to vote[.]").

250 F. Supp. 330, 353 (E.D. La. 1965) (discussing enforcement authority under the Fifteenth Amendment).[3]

In fact, Congress expressly removed the intent requirement from Section 11(b) (which existed in its predecessor statute, Section 131(b)), to make it *easier* for plaintiffs to challenge intimidation in voting—not to relinquish Section 11(b) from its enforcement power under the Reconstruction Amendments. *See Nat'l Coal. for Black Political Participation v. Wohl*, 661 F. Supp. 3d 78, 116 (S.D.N.Y. 2023). And enforcement of the Fourteenth and Fifteenth Amendments is not limited to laws which require discriminatory intent. *See, e.g.*, *Allen v. Milligan*, 599 U.S. 1, 41 (2023) (quoting *City of Rome v. United States*, 446 U.S. 156, 173 (1980)); *see also Tennessee v. Lane*, 541 U.S. 509, 518-19, 528 (2004); *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726-28 (2003); *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997); *Oregon v. Mitchell*, 400 U.S. 112, 118 (1970))

The structure of the VRA only further confirm that Section 11(b) must be privately enforceable. Section 12(f) confers district court jurisdiction over actions under Section 11(b) (among other provisions of the VRA), "without regard to

---

[3] *Katzenbach* was brought under the Civil Rights Act of 1957, 52 U.S.C. § 10101(b) ("Section 131(b)")), which is VRA § 11(b)'s predecessor statute. Like VRA § 11(b), Section 131(b) prohibits "intimidat[ion]," "threat[s]," and "coerc[ion]" in connection with voting. 52 U.S.C. § 10101(b). VRA § 11(b) was enacted to expand and remove the intent requirement of Section 131(b). See H.R. Rep. No. 89-439, at 30 (1965). Thus, VRA § 11(b) is interpreted *in pari materia* with Section 131(b), but more broadly.

whether *a person*" asserting their rights has "exhausted any administrative or other remedies." 52 U.S.C. § 10308(f) (emphasis added). The only reason to excuse "a person" from administrative exhaustion would be to make clear that "a person" would be free to file suit in court. *See Allen v. State Bd. of Elections*, 393 U.S. 544, 555 n.18 (1969) (assuming that Section 12(f) "necessarily implies that private parties may bring suit under the Act").

Likewise, Section 14(e) provides for attorneys' fees for "the prevailing party, *other than the United States* . . . [i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment." 52 U.S.C. § 10310(e) (emphasis added). Again, the only reason to provide for attorney's fees to non-governmental plaintiffs would be if non-governmental plaintiffs were permitted to bring suit. *Cf. Morse*, 517 U.S. at 234 (finding that Section 14(e)'s attorneys fee provision recognizes the existence of a private right of action for Section 10); *accord Talevski*, 599 U.S. at 189-92 (holding government enforcement of a law did not preclude private enforcement).

And as discussed *infra* Section II, the "contemporary legal context" surrounding the VRA's enactment—including that it was passed "against a 'backdrop' of decisions in which implied causes of action were regularly found"—also shows that Congress contemplated private enforcement of the VRA, including Section 11(b). *Morse*, 517 U.S. at 231. Indeed, before the VRA was enacted, the

United States Commission on Civil Rights expressly acknowledged that although the Department of Justice had obtained some favorable rulings under a predecessor statute to Section 11(b), "it has not been able to prepare and file all the suits that appear warranted." U.S. Comm'n for Civil Rights, *Voting* 100 (1961).

## II. Longstanding Precedent from the Supreme Court and this Court Reinforces the Existence of a Private Right of Action for Section 11(b).

Decades of precedent from the Supreme Court and this Court has found or otherwise assumed private rights of action for other parts of the VRA, including as discussed above. Section 11(b) also must contain a private right of action: to hold otherwise would be an anomalous and unsupported reading of this statute that is equally designed to enforce the guarantees of the Fourteenth and Fifteenth Amendments.

As mentioned, the Supreme Court has directly addressed the existence of a private right of action under the VRA on two occasions: in *Morse v. Republican Party of Va.*, 517 U.S. 186 (1996), and *Allen v. State Board of Elections*, 393 U.S. 544 (1969). *See Morse*, 517 U.S. at 231-32 (plurality opinion by Justice Stevens); *see also id*. at 240 (Breyer, J., concurring) (majority of Justices holding that Section 10 provides an implied private right of action and acknowledging an implied private right of action in Section 2); *Allen*, 393 U.S. at 555-57 (1969) (holding that Section 5 provides an implied private right of action).

In *Allen*, the Supreme Court found a private right of action to enforce Section 5 of the VRA, which, like Section 11(b), can be enforced by the Attorney General under Section 12. *Allen*, 393 U.S. at 555-56. In so holding, the Court explained that to interpret Section 12 as limiting the concurrent ability of private individuals to bring suit under the VRA would contradict Congress's intent to "make the guarantees of the Fifteenth Amendment finally a reality for all citizens." *Id.* at 556. The Court explained: "[t]he achievement of the [VRA's] laudable goal could be severely hampered . . . if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General." *Id.* "It is consistent with the broad purpose of this Act," the Court thus concluded, "to allow the individual citizen standing." *Id.* at 557.

Likewise, in *Morse*, the Supreme Court found a private right of action under Section 10 of the VRA. *See Morse*, 517 U.S. at 232. There, the Court explained that its finding of a private right of action in *Allen* was reinforced by subsequent amendments to the VRA addressed *supra* Argument Section I, in which Congress amended Section 3 to allow suits under any section of the VRA not just by the Attorney General but also "'an aggrieved person'" and added Section 14(e) to provide for attorneys' fees to prevailing parties "'other than the United States.'" *Id.* at 233-34 (quoting 52 U.S.C. §§ 10302(a), 10310(e) (emphasis added)).

Also acknowledging a private right of action under Section 2, the Supreme Court observed that "[i]t would be anomalous, to say the least, to hold that both § 2 and § 5 are enforceable by private action but § 10 is not, when all lack the same express authorizing language." *Id.* at 232. The same can be said of Section 11(b).[4]

Of course, in the decades since, the Supreme Court, this Court, and other courts around the country have continued to adjudicate VRA cases brought by private parties, including as recently as *Callais*.[5]

## CONCLUSION

This Court should reject any argument that Section 11(b) is not privately enforceable, consistent with the text, structure, and history of the statute as well as

---

[4] *Morse* also emphasized that, in *Allen*, it had "attached significance to the fact that the Attorney General had urged us to find that private litigants may enforce the Act"—a position the United States renewed in *Morse*. *Id.* at 231-32 (citing *Allen*, 393 U.S. at 557 n.23).

[5] *See, e.g.*, *Louisiana v. Callais*, 608 U.S. 85, 103 (2026); *Milligan v. Merrill*, 582 F. Supp. 3d 924, 1031 (N.D. Ala. 2022) (collecting cases), *aff'd sub nom. Allen v. Milligan*, 599 U.S. 1 (2023); *Wis. Legislature v. Wis. Elections Comm'n*, 595 U.S. 398 (2022); *Brnovich v. DNC,* 594 U.S. 647 (2021); *Abbott v. Perez*, 585 U.S. 579 (2018); *Cooper v. Harris*, 581 U.S. 285 (2017); *LULAC v. Perry*, 548 U.S. 399 (2006); *Abrams v. Johnson*, 521 U.S. 74 (1997); *Bush v. Vera,* 517 U.S. 952 (1996); *Shaw v. Hunt*, 517 U.S. 89 (1996); *Holder v. Hall*, 512 U.S. 874 (1994); *Johnson v. De Grandy*, 512 U.S. 997 (1994); *Voinovich v. Quilter,* 507 U.S. 146 (1993); *Growe v. Emison*, 507 U.S. 25 (1993); *Thornburg v. Gingles,* 478 U.S. 30 (1986), *abrogated by Callais*, 608 U.S. at 122; *see also, e.g.*, *Farrakhan v. Washington*, 338 F.3d 1009, 1011-12 (9th Cir. 2003); *Old Person v.* Cooney; 230 F.3d 1113, 1120 (9th Cir. 2000); *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548-50 (9th Cir. 1998) (per curiam); *Chinese for Affirmative Action v. Leguennec*, 580 F.2d 1006, 1008-09 (9th Cir. 1978).

longstanding precedent regarding the Voting Rights Act and the enforcement of its sacred guarantees.

Respectfully submitted,

/s/ *STUART NAIFEH*
STUART NAIFEH
JOHN S. CUSICK
BRITTANY CARTER
NAACP Legal Defense & Educational Fund, Inc.
40 Rector Street, 5th Floor
NEW YORK, NY 10006
(212) 965-2200
snaifeh@naacpldf.org

MAX L. MEYERS
National Association for the Advancement of Colored People
4805 Mt. Hope Drive
Baltimore, MD 20215
(410) 580-5777

ANUJA D. THATTE
DEUEL ROSS
HAYLEY HAHN
VICTOR OLOFIN
NAACP Legal Defense & Educational Fund, Inc.
700 14th St. N.W.
Ste. 600
Washington, DC 20005
(202) 682-1300

LEAH WONG
PATRICK STEGEMOELLER
Asian American Legal Defense and Education Fund
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932

***Counsel for amici curiae***

October 28, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-7139

I am the attorney or self-represented party.

**This brief contains** 3,051 **words,** including [ ] words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ● is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ○ complies with the length limit designated by court order dated [ ].
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Stuart Naifeh **Date** 10/28/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 28, 2026.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Stuart Naifeh*
Stuart Naifeh

***Counsel for amici curiae***