*Appeal No. 26-7139*

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CALIFORNIA NURSES ASSOCIATION, et al.,

*Plaintiffs-Appellees,*

v.

MARKWAYNE MULLIN, et al.,

*Defendants-Appellants.*

**On Appeal from the United States District Court for the Northern District of California**
**Hon. Araceli Martínez-Olguín**
**Case No. 4:26-cv-10680-AMO**

# BRIEF OF FORMER FEDERAL LAW-ENFORCEMENT AND IMMIGRATION-ENFORCEMENT OFFICIALS, AND FORMER FEDERAL PROSECUTORS AS *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY

Laurence F. Pulgram
Todd R. Gregorian
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Email: lpulgram@fenwick.com
tgregorian@fenwick.com

Anna Uhls
FENWICK & WEST LLP
1155 F Street NW, 12th Floor
Washington, D.C. 20004
Telephone: 202.970.3000
Email: auhls@fenwick.com

Counsel for *Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICI CURIAE* .......... 1

SUMMARY OF ARGUMENT .......... 3

ARGUMENT .......... 4

I. DOJ'S INVESTIGATIVE STANDARDS GIVE INVESTIGATORS A RANGE OF TOOLS, GUIDED BY THE LEAST INTRUSIVE METHOD FEASIBLE .......... 4

II. NEAR AN ELECTION, VISIBLE STEPS AND PUBLICITY CALL FOR RESTRAINT .......... 6

III. THE ORDER LEAVES LEGITIMATE INVESTIGATIONS INTACT. .......... 8

CONCLUSION .......... 10

APPENDIX: LIST OF AMICI CURIAE .......... 11

CERTIFICATE OF COMPLIANCE FOR BRIEFS .......... 14

CERTIFICATE OF SERVICE .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES AND RULES**

8 U.S.C. § 1227(a)(6) ... 1

18 U.S.C. § 611 ... 1

18 U.S.C. § 3282(a) ... 10

28 C.F.R. § 50.2(b)(7) ... 8

Freedom of Information Act ... 5

Voting Rights Act Section 11(b) ... 2

**OTHER AUTHORITIES**

Attorney General's Guidelines for Domestic FBI Operations pt. I.C.2.a (2008) ("AGG-Dom") ... 4

Emergency Mot. Under Cir. R. 27-3 for Immediate Admin. Stay & Stay Pending Appeal at 24, No. 26-7139 (9th Cir. Oct. 27, 2026) ... 3

FBI Domestic Investigations and Operations Guide § 4.4 (2024) ("DIOG") ... 5

Justice Manual § 9-85.210 ... 7

Justice Manual § 9-85.300 (added Aug. 2022) ("JM") ... 6

Justice Manual § 9-85.500 ... 7, 9

Justice Manual § 9-90.730 ... 6

U.S. Dep't of Justice, Federal Prosecution of Election Offenses 11–12 (8th ed. 2017) ... 6

## INTEREST OF *AMICI CURIAE*

*Amici* are 40 former officials of the U.S. Department of Justice (DOJ), including the Federal Bureau of Investigation (FBI), and of the U.S. Department of Homeland Security (DHS), many of whom spent their careers deciding when the government has enough probative information to act on a lead, and how to proceed to collect necessary information. They include former: U.S. Attorneys and senior and line Assistant U.S. Attorneys; criminal and public-corruption chiefs and District Election Officer; senior trial attorney in DOJ's Public Integrity Section, which supervises federal election-crime prosecutions; Civil Rights Division attorneys, including attorneys in DOJ's Voting Section; a civil attorney who litigated immigration and naturalization cases; a DOJ immigration policy specialist; FBI special agents and senior FBI officials, including section chiefs, an Assistant Special Agent in Charge, and assistant general counsel; senior DHS officials, including a DHS Officer and a Deputy Officer for Civil Rights and Civil Liberties and a Deputy Chief of Staff of U.S. Customs and Border Protection; and a retired immigration judge. *Amici* sign in their personal capacities; titles are listed for identification only. A list of *amici* appears in the Appendix.

*Amici* believe that unlawful voting by noncitizens, in those instances when it occurs, is an offense that the government may rightly investigate and prosecute. 18 U.S.C. § 611; 8 U.S.C. § 1227(a)(6). Their interest here is in how investigations

proceed. A democratic system protects the security of voting, it protects a citizen's right to vote, and it protects citizens against losing their freedom without due process. All are at stake when the government investigates unlawful voting as part of the immigration and citizenship process, as here. *Amici* offer context on how investigations of this kind are ordinarily conducted under DOJ's standards, so that the Court can assess the practical effect of the district court's time-limited order.

*Amici* take no position on the disputed facts or on the legal questions as to the application of Section 11(b) of the Voting Rights Act, and they offer no view on whether the past government conduct in the record met the standard of sound practices described below. They do not support either party. They offer professional context to help the Court assess the order's practical consequences for investigations.

No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person other than *amici* and their counsel contributed such money.

## SUMMARY OF ARGUMENT

The district court's order is limited in both time and scope. The district court enjoined two kinds of activity in nine states through Election Day: election-related field operations and interviews that involve, or are likely to involve, people agents know, suspect, or should reasonably know or suspect are U.S. citizens, and a narrower, overlapping category tied to TECS records. Order Granting Prelim. Inj. at 18, Dkt. 87 (Oct. 21, 2026) ("Order"). It leaves DHS free to investigate voter fraud "by lawful means." *Id.* at 16; *see also id.* at 14.

The government has appealed and seeks a stay pending appeal, arguing that the order will chill field interviews it describes as "integral" to "nearly all voter fraud investigations." Emergency Mot. Under Cir. R. 27-3 for Immediate Admin. Stay & Stay Pending Appeal at 24, No. 26-7139 (9th Cir. Oct. 27, 2026), Dkt. 8.1 ("Stay Mot.") (quoting Dkt. 90-1 ¶ 11).

*Amici* offer two points of professional context. First, consistent with DOJ's investigative guidelines, investigators choose among a range of tools, guided by the principle that the least intrusive method feasible should be used. Second, and most relevant here, DOJ has long directed that overt investigative steps in election-fraud matters, including interviews of voters, generally wait until after the election, because such steps risk chilling legitimate voting. Measured against that practice, the order's practical effect is limited. It defers one category of overt step, as to likely

citizens who would therefore be entitled to vote in this election, for less than two weeks. It does not stop any investigation: records work can continue now, and every investigative step remains available once the polls close.

## ARGUMENT

Several federal components share responsibility for investigating unlawful voting by noncitizens. Within DHS, U.S. Citizenship and Immigration Services (USCIS) maintains naturalization and other immigration records and, in the program at issue, generates the lists of people to be investigated; Homeland Security Investigations (HSI), the investigative arm of U.S. Immigration and Customs Enforcement (ICE), conducts the field interviews. Order at 1–2. The FBI also investigates federal election crimes, and DOJ prosecutes them, including any criminal case HSI develops. *Amici* therefore draw on DOJ's investigative and election-crimes standards.

### I. DOJ'S INVESTIGATIVE STANDARDS GIVE INVESTIGATORS A RANGE OF TOOLS, GUIDED BY THE LEAST INTRUSIVE METHOD FEASIBLE.

Consistent with DOJ's guidelines, the choice of investigative step is a matter of judgment exercised within a framework. The Attorney General's Guidelines direct that, at every stage, agents use "the least intrusive method feasible," weighing "the effect on the privacy and civil liberties of individuals and potential damage to reputation." Attorney General's Guidelines for Domestic FBI Operations pt. I.C.2.a

(2008) ("AGG-Dom");[1] FBI Domestic Investigations and Operations Guide § 4.4 (2024) ("DIOG").[2] At the earliest stage, an assessment, agents need no factual predicate and are generally confined to methods "of relatively low intrusiveness, such as obtaining publicly available information, checking government records, and requesting information from members of the public"; more intrusive methods require predication and supervisory approval. AGG-Dom at 17–18. Under these standards, investigators weigh how intrusive each available step would be. A field interview at a residence by armed or uniformed agents is among the most visible and intrusive steps an investigation takes short of a search or an arrest, while records checks, interagency queries, and consultation with state or local election officials intrude far less. Timing and manner are part of that judgment: in *amici's* experience, when and how an interview is conducted can affect cooperation and the quality of the information obtained. For election-related matters, DOJ's standards add a specific timing consideration, discussed next.

---

[1] https://www.justice.gov/archive/opa/docs/guidelines.pdf. There may also be a more current AGG-Dom that has not yet been publicly released via the Freedom of Information Act.

[2] https://vault.fbi.gov/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29/fbi-domestic-investigations-and-operations-guide-diog-2024-version/FBI%20Domestic%20Investigations%20and%20Operations%20Guide%20%28DIOG%29%202024%20Version%20Part%2001/view.

## II. NEAR AN ELECTION, VISIBLE STEPS AND PUBLICITY CALL FOR RESTRAINT.

Near an election, overt investigative steps have effects beyond the investigation itself because voters see them. The Justice Manual directs that the Department "should not engage in overt criminal investigative measures in matters involving alleged ballot fraud until the election in question has been concluded, its results certified, and all recounts and election contests concluded," and it defines ballot fraud to include "the process by which voters are registered." Justice Manual § 9-85.300 (added Aug. 2022) ("JM").[3] The reason, the Manual explains, is that "[d]oing otherwise runs the risk of chilling legitimate voting and campaign activities and of interjecting the investigation itself into ongoing campaigns." *Id.* DOJ's election-offenses manual, which the Justice Manual still cites for the Department's "longstanding policies regarding the timing of charges or taking overt investigative steps," JM § 9-90.730 (updated Nov. 2022), described the same practice in investigative terms: "in most cases voters should not be interviewed, or other voter-related investigation done, until after the election is over," because "[s]uch overt investigative steps may chill legitimate voting activities." U.S. Dep't of Justice, Federal Prosecution of Election Offenses 11–12 (8th ed. 2017).[4] The manual added

[3] https://www.justice.gov/jm/jm-9-85000-protection-government-integrity#9-85.300

[4] https://www.govinfo.gov/content/pkg/GOVPUB-J-PURL-gpo145659/pdf/GOVPUB-J-PURL-gpo145659.pdf

that any criminal investigation "must be conducted in a way that minimizes the likelihood that the investigation itself may become a factor in the election." *Id.* at 9. Although parts of DOJ's election-crimes guidance are under revision, *see* JM § 9-85.210, the non-interference rule itself remains in the Justice Manual and reflects longstanding practice.

A companion provision applies to every matter, not only ballot fraud. Prosecutors and agents may never select the timing of investigative steps "for the purpose of affecting any election," and "[a]ny action likely to raise an issue or the perception of an issue" under that rule requires consultation with the Public Integrity Section of DOJ's Criminal Division. JM § 9-85.500. These policies also bear on DHS election cases: any criminal case HSI develops must be charged by DOJ prosecutors who are subject to them, and the guidance at issue here directs HSI field offices to "support timely prosecutorial review." Order at 4 (quoting Dkt. 50-2 at 2–3). In the experience of *amici* who served at DHS, its investigators treated restraint on overt steps near an election as a professional standard, not merely a DOJ rule, and HSI agents working election cases timed overt steps with the prosecutors who would bring the cases.

Investigative records are kept for supervisors, prosecutors, and courts, not for publicity. DOJ's election-offenses manual located deterrence in general public awareness of the Department's prosecutions, "not through interference with the

[election] process itself." Federal Prosecution of Election Offenses at 8–9 ("it is the general policy of the Department not to conduct overt investigations, including interviews with individual voters, until after the outcome of the election allegedly affected by the fraud is certified").[5] DOJ regulations direct personnel to not help the media photograph a defendant in custody and to not release a defendant's photograph "unless a law enforcement function is served thereby." 28 C.F.R. § 50.2(b)(7). In the experience of *amici* with relevant experience, public communication about an arrest required separate approval and was kept apart from the operational record. The district court found that an August 28, 2026, memorandum directed agents to log findings in a separate portal so that photos and videos could be used in "[m]edia and [r]eporting." Order at 4 (quoting Dkt. 50-2 at 2–3). *Amici* do not address how that portal was used. Documentation created for publicity serves no investigative purpose.

Taken together, these policies call for heightened review of, and restraint in, overt investigative steps near an election, and for keeping investigative records separate from public messaging.

## III. THE ORDER LEAVES LEGITIMATE INVESTIGATIONS INTACT.

Read against these longstanding practices, the order's practical effect on legitimate enforcement is limited. It is temporary: it took effect on October 23 and

---

[5] https://www.govinfo.gov/content/pkg/GOVPUB-J-PURL-gpo145659/pdf/GOVPUB-J-PURL-gpo145659.pdf

expires when the polls close on November 3. Order at 18. It is narrow: it reaches only election-related field operations and interviews involving people agents know, suspect, or should reasonably know or suspect are citizens. *Id.* Records checks, file reviews, interagency queries, and consultation with election officials are not field operations or interviews, and the order does not bar field work involving people whom agents have no reason to think are citizens. The government describes in-person interviews as integral to these investigations. Stay Mot. at 24. The order does not take that tool away. As to likely citizens only (who would have the right to vote in this election in all events), it defers that tool until the polls close, the same kind of pre-election deferral DOJ's own policies already contemplate. And it tracks the line DHS has drawn for itself: DHS told the district court that USCIS "seeks to exclude any United States Citizens from further review." Order at 3 (quoting Dkt. 46-1 ¶ 10).

For most of the people the order covers, the restriction costs an investigation nothing: a person who was a citizen when that person registered or voted cannot have committed the offense this program targets—registering or voting as a noncitizen. To the extent the restriction reaches field interviews of naturalized citizens suspected of voting before they naturalized, Order at 2–4, 18, deferring those interviews for a few days costs little, because those cases rest largely on records already in government hands. For these cases, the order postpones one step until after the election; it does not stop the investigation. Nor is there statutory urgency:

the general limitations period for these offenses is five years, 18 U.S.C. § 3282(a), and it is ten years for naturalization-fraud offenses, *id.* § 3291.

## CONCLUSION

*Amici* respectfully submit that the government's asserted harm should be measured against what the order actually does. For less than two weeks, it defers the most visible and intrusive steps as to likely citizens: the kind of overt, pre-election steps that DOJ's own longstanding practice already counsels deferring. Every other investigative tool remains available now, and all of them remain available once the polls close. The order affects when certain steps may be taken, not whether the government may investigate.

Dated: October 28, 2026

Respectfully submitted,

FENWICK & WEST LLP

By: *s/ Laurence F. Pulgram*
Laurence F. Pulgram

Attorneys for *Amici Curiae*

## APPENDIX: LIST OF *AMICI CURIAE*

1. Anderson, Lauren C. - Former Assistant Special Agent in Charge, FBI

2. Beach, Richard D. - Retired FBI Special Agent

3. Borden, Edward F., Jr. - Former Assistant United States Attorney

4. Carroll, Kevin Thomas - Former Senior Counselor to the Secretary of Homeland Security

5. Cash, Steven A. - Former Senior Advisor to the Under Secretary for Intelligence & Analysis, DHS

6. Chandra, Subodh - Former Assistant United States Attorney, Northern District of Ohio

7. Cobb, Ty - Former Special White House Counsel; Assistant United States Attorney, District of Maryland (Chief of Criminal Division)

8. Coughlin, Colleen D. - Former Assistant United States Attorney, Northern District of Illinois

9. Culliton-González, Katherine - Former DHS Officer for Civil Rights and Civil Liberties and Former Senior Attorney, Voting Rights Section, DOJ

10. Durbin, Richard - Former United States Attorney, Western District of Texas

11. Fallin, Leanne - Former FBI Assistant General Counsel

12. Goldfine, Dan - Former Trial Attorney, Antitrust Division, DOJ

13. Greenberg, Bonnie S. - Former Assistant United States Attorney

14. Haried, John - Former Director of Electronic Litigation, DOJ

15. Ivey, Glenn F. - Former Assistant United States Attorney

16. Levchuk, Andrew - Former Senior Trial Attorney, Public Integrity Section, Criminal Division, DOJ

17. Luther, Debora G. (The Hon.) (Ret.) - Former Trial Attorney, Voting Rights Section, Civil Rights Division, DOJ

18. Matz, A. Howard - Former Assistant United States Attorney

19. Matz, Jeremy - Former Assistant United States Attorney, Central District of California

20. Miller, Barry - Former Trial Attorney, Civil Rights Division; Former Assistant United States Attorney, Northern District of Illinois

21. Mina, Peter E. - Former Deputy Officer for Civil Rights and Civil Liberties, DHS

22. O'Leary, Christopher - Former Section Chief Counterterrorism Division, FBI

23. Olinger, David Y., Jr. - Former Assistant United States Attorney, Eastern District of Kentucky

24. Partida, Ana - Immigration Judge (Retired)

25. Proctor, Melanie - Former Civil Assistant U.S. Attorney, Southern and Northern Districts of California

26. Rochlin, Karen - Retired Assistant U.S. Attorney and former District Election Officer, Southern District of Florida

27. Rose, Alan Douglas - Former Assistant United States Attorney, District of Massachusetts

28. Rotert, Mark - Former Assistant United States Attorney, Northern District of Illinois

29. Roth, John - Former Chief, Fraud and Public Corruption Section, U.S. Attorney's Office for the District of Columbia

30. Schermerhorn, James M. - Former Special Litigation Counsel, DOJ

31. Shapiro, David W. - Former United States Attorney, Northern District of California

32. Shora, Kareem - Former Deputy Director, Center for Prevention Programs and Partnerships, DHS

33. Smith, Jenifer Ann Lindsey - Former FBI Section Chief

34. Stiles, Wayne F. - Former FBI Special Agent

35. Syring, Kenneth B. - Former Deputy Chief of Staff, U.S. Customs and Border Protection

36. Tadross, Shahira - Former Litigation Counsel/Trial Attorney, Civil Division, Office of Immigration Litigation, DOJ

37. Van Wormer, Bernard - Former Assistant United States Attorney

38. Villarroel, Luis C. - FBI Special Agent (Retired)

39. Williams, Scott E. - Former Criminal Chief, Western District of Oklahoma

40. Wolf, Rev. David B., Esq. - Former Attorney Advisor, Office of Legislation & Policy (OLP), Immigration Specialist

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate Of Compliance For Briefs

**9th Cir. Case Number(s): 26-7139**

I am the attorney or self-represented party.

**This brief contains 2,596 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.
[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/ Laurence F. Pulgram*      **Date**: October 28, 2026
Laurence F. Pulgram

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

Dated: October 28, 2026

FENWICK & WEST LLP

By: *s/ Laurence F. Pulgram*
Laurence F. Pulgram
Attorneys for *Amici Curiae*