**No. 26-7139**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

CALIFORNIA NURSES ASSOCIATION; NATIONAL NURSES UNITED; CITY AND COUNTY OF SAN FRANCISCO; COUNTY OF SANTA CLARA; and VOTO LATINO FOUNDATION,
*Plaintiffs-Appellees,*

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, et al.,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
Case No. 4:26-cv-10680-AMO (Hon. Araceli Martínez-Olguín)

# BRIEF OF PLAINTIFFS-APPELLEES OPPOSING REHEARING EN BANC OF THE COURT'S ORDER DENYING A STAY PENDING APPEAL

Benjamin R. Farley
Imani Franklin
NATIONAL IMMIGRATION LAW CENTER
PO Box 34573
Washington, D.C. 20043
(213) 639-3900

Jessica Marsden
*Counsel of Record*
Geoffrey Curfman
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038
(202) 579-4582
*jess.marsden@protectdemocracy.org*

*Attorneys for Plaintiffs-Appellees California Nurses Association, National Nurses United, and Voto Latino Foundation*

*(Additional counsel on inside cover)*

Tony LoPresti
Kavita Narayan
Meredith A. Johnson
Bill Nguyen
COUNTY OF SANTA CLARA
70 W. Hedding Street, East Wing
9th Floor
San José, CA 95110
(408) 299-5900

*Attorneys for Plaintiff-Appellee County of Santa Clara*

David Chiu
Yvonne R. Meré
Mollie M. Lee
Sara Eisenberg
Michael A. Keough
Joel F. Wacks
CITY AND COUNTY OF SAN FRANCISCO
City Hall, Room 234
Fox Plaza, 1390 Market Street, 7th Fl.
San Francisco, CA 94102
(415) 554-4655

*Attorneys for Plaintiff-Appellee City and County of San Francisco*

Beau Tremitiere
PROTECT DEMOCRACY PROJECT
300 Center Ave, Suite G-251
Superior, CO 80027
(202) 579-4582

Hayden Johnson
Zachary West
Ashley Fox
Jane Bentrott
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW, Suite 163
Washington, DC 20006
(202) 579-4582

Elizabeth B. Prelogar
COOLEY LLP
1299 Pennsylvania Ave NW
Washington, DC 20004
(202)776-2076

Anna M. Stapleton
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2750

*Attorneys for Plaintiffs-Appellees California Nurses Association, National Nurses United, and Voto Latino Foundation*

## TABLE OF CONTENTS

Introduction ........................................ 1

Background ........................................ 2

Legals Standards ........................................ 5

Argument ........................................ 5

I. The Panel Decision Does Not Involve Any Questions of Exceptional Importance ........................................ 5

II. The Panel Decision Does Not Conflict with Any Ninth Circuit or U.S. Supreme Court Precedent ........................................ 7

Conclusion ........................................ 13

# INTRODUCTION

The panel applied established law in declining to stay the District Court's narrow, time-limited injunction barring the U.S. Department of Homeland Security ("DHS") from continuing actions that have intimidated voters in the final days before the midterm elections. The panel held that DHS failed to show irreparable harm, as required to obtain a stay, for three primary reasons: (1) DHS proffered only conclusory statements to support claims that investigations would be impaired by the injunction; (2) the federal government historically adhered to a long-standing policy to *avoid* visible election-related enforcement activities while voting is ongoing, indicating that a brief delay of several days in the narrow set of covered investigations would not be harmful; and (3) DHS elected to start any such investigations, which concern unlawful voting in *previous* elections, too late to be resolved before Election Day, even if this injunction were lifted.

The panel further held that, consistent with a recent en banc decision from this Court, the plaintiffs California Nurses Association and National Nurses United ("CNA/NNU") have established associational standing because their U.S. citizen members have stopped engaging in election-related activities in response to reasonable, nonspeculative fears of DHS's intimidating election-related field operations. *See Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 635–36 (9th Cir. 2026) (en banc). The panel relied upon the district court's clear findings of fact,

including the undisputed facts that the data and processes used by DHS have lead agents to wrongfully interrogate U.S. citizens about their voter eligibility.

There is no conflict or "question[] of exceptional importance" warranting rehearing en banc. Fed. R. App. P. 40(b)(2). With just four days remaining before this preliminary injunction expires, rehearing en banc of the panel's decision to deny a stay pending appeal should be denied.

## BACKGROUND

Plaintiffs in this case are nurses unions active in the political process that challenged a policy, the Unlawful Voter Initiative, under which DHS investigates purported election-related crimes using faulty data and haphazard processes likely to erroneously sweep in U.S. citizens and then carrying out field operations and interrogations targeting individuals identified through that fundamentally flawed process. *See* Panel Op. 2-6. The Initiative consists of two primary phases, as outlined in DHS documents, public reporting, and a disclosure from a DHS whistleblower with detailed knowledge of these agency operations. *See id.*

Under the first phase, United States Citizenship and Immigration Services ("USCIS") identifies subjects for investigations by generating a target list using data that contains "inaccurate citizenship status" for millions of individuals and consists of "millions of records of uncertain origin or from unverified commercial databases." *Id.* 3-4. DHS acknowledged that U.S. citizens may be present on the

target list. *Id.* 4. USCIS agents are then instructed to seek to refine the list "using other sources of undefined data." *Id.* Agents were instructed to review at least 40 profiles per day, affording no more than "12 minutes to determine if a subject is a U.S. citizen." *Id.* The district court found that "[e]ven under the best conditions, there is a high likelihood of error in review because there is no federal database containing citizenship status of U.S. residents" and "[t]he time limitations implemented during [this process] further exacerbate the risk of error." *Id.* Notwithstanding the high likelihood of errors, agents were instructed to enter TECS records against individuals identified, which "can be used against them beyond the voting context, including in their interactions with the federal government." *Id.* 4-5.

In the second phase, USCIS then provided its target list to DHS's Homeland Security Investigations ("HSI") directorate to carry out field operations in nine specified states—California, Connecticut, Georgia, Missouri, New York, Nevada, Pennsylvania, Washington, and Wisconsin—against individuals identified through its flawed matching process during the voter registration and early voting periods. Panel Op. 3, 5. Some targets identified for HSI were known to be naturalized U.S. citizens. *Id.* at 5. HSI dispatched agents to investigate individuals using field interviews and interrogations, which were "expressly designed to resolve . . . discrepancies" in DHS's target data. *Id.* DHS also embarked on a corresponding publicity campaign under which it has "broad[ly] disseminat[ed] . . . social media

content showing HSI deployments in voter fraud operations." *Id.* 5-6. These posts are replete with photos and videos showing "armed and masked agents making arrests or confronting individuals, sometimes dragging people out of their homes in the early hours of the morning." *Id.* 6.

On October 21, 2026, the district court granted CNA/NNU's motion for a preliminary injunction, holding that CNA/NNU have standing and are likely to succeed on the merits of their claim that DHS's operations amount to unlawful voter intimidation in violation of Section 11(b) of the Voting Rights Act of 1965. *Id.* 6-7; *see* Dist. Ct. Dkt. 87. The injunction prohibits DHS from conducting "field operations and field interviews" in the nine target states "that involve or are likely to involve persons" DHS "know[s], suspect[s], or should reasonably know or suspect are U.S. citizens," through the close of polls on Election Day, November 3. Panel Op. 7.

The district court administratively stayed the injunction until October 23, affording DHS time to appeal before the injunction took effect. However, DHS did not take any action until three days after the expiration of the administrative stay, noticing its appeal on October 26. DHS then waited yet another day, asking this Court to stay the injunction pending appeal on October 27, six days after the injunction issued.

The panel held oral argument and then issued a decision denying the motion.[1] The panel first held that CNA/NNU likely have associational standing to sue on behalf of their members. Panel Op. 8-14. The panel then assessed whether DHS would be irreparably harmed if the injunction remained in effect for the last few days of voting, until the close of polls next Tuesday. *Id.* 15-22. Because DHS failed to meet its threshold burden on irreparable harm, the panel denied the motion on this ground alone. *See id.* 14 ("When a party fails to demonstrate irreparable harm, the *Nken* analysis can 'conclude.'" (quoting *Doe #1 v. Trump*, *Doe #1 v. Trump*, 957 F.3d 1050, 1061 (9th Cir. 2020)).

**LEGAL STANDARDS**

Rehearing en banc, which is "not favored," requires "questions of exceptional importance" or a decision "necessary to secure or maintain uniformity" in precedent. Fed. R. App. P. 40(a), (b)(2). "En banc courts are the exception, not the rule." *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180 (9th Cir. 2013) (Wardlaw, J. and Callahan, JJ. concurring in denial of rehearing en banc) (citation omitted).

---

[1] [1] Meanwhile, the district court also denied DHS's motion to stay the injunction. Dist. Ct. Dkt.92.

## ARGUMENT

### I. The Panel Decision Does Not Involve Any Questions of Exceptional Importance

There is no "question[] of exceptional importance" arising from the practical consequences of the underlying decision or the legal issues addressed in that decision that warrant rehearing en banc here. Fed. R. App. P. 40(b)(2).

The injunction at issue has clear geographic and temporal limitations: the order applies to specified DHS operations in just nine states, and by its own terms, it will expire when polls close on Election Day. Panel Op. 19-20. Because DHS choose to delay its request for a stay nearly a week after this "properly drawn and narrowly defined" injunction was issued on October 23, the injunction will expire, on its own terms, in just four days. *Id.* 22.

The injunction is also limited in scope, only covering Defendants and only as to their election-related investigations and interrogations involving U.S. citizens. *Id.* 19-20. As the panel acknowledged, "DHS's General Counsel James Percival seems to agree that the Federal Defendants face minimal injury here, and that initial reporting on the preliminary injunction exaggerated its impact on the government." *Id.* 17. As the panel also recognized, the Amicus Brief of Former Federal Law Enforcement and Immigration Enforcement Officials further confirms the absence of any irreparable harm to DHS: *amici* "outline[] how the preliminary injunction leaves DHS free to investigate voter fraud by lawful means and keeps the core

investigations by Federal Defendants intact," as "Federal Defendants can still choose to employ a range of less intrusive, and still effective, mechanisms to pursue unlawful voting." *Id.* 17 (internal quotation marks omitted); *see* Panel Dkt. 32.1. Any potential impact is further minimized because, as DHS concedes, the investigations at issue focus exclusively on "alleged illegal voting . . . in previous elections," eliminating any justification for interrogations of U.S. citizens while voting continues over the next four days. Panel Op. 18. The panel's conclusion that DHS failed to make the necessary showing of irreparable harm was therefore well supported and correct. *Id.* 15-18.

Further, the district court's findings of fact drew upon a record that was virtually uncontested, consisting mostly of records produced by DHS and a detailed disclosure from a DHS whistleblower, whose descriptions of agency policy and practice were unrebutted by the agency below. In finding that CNA/NNU have standing, was likely to succeed on the merits, and satisfied each of the other factors under *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 20 (2008), the district court applied well-settled Circuit and U.S. Supreme Court precedent. Likewise, the panel easily concluded that a stay was improper because DHS failed to show irreparable harm in this unique case, relying upon DHS's long delay in seeking appellate relief, the short remaining length of the injunction, and the fact "the injunction is drawn from language that [DHS] endorsed earlier" in this case. Panel Op. at 21.

In the absence of any questions of exceptional importance, en banc review is inappropriate.

## II. The Panel Decision Does Not Conflict with Any Ninth Circuit or U.S. Supreme Court Precedent

DHS does not establish any conflict with precedent that warrants en banc review.

***Standing.*** The panel opinion faithfully applied this Court's most relevant standing decisions concerning voter mobilization and the rights of voters. Panel. Op. 9-10 (applying *Mi are cognizableFamilia Vota v. Fontes*, 129 F.4th 691, 708–09 (9th Cir. 2025), and *Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 635–36 (9th Cir. 2026) (en banc)).

As the panel opinion recognized, CNA/NNU's representational standing here is even stronger than the standing approved in *Mi Familia Vota* because CNA/NNU's harms are "substantially less speculative than what passed muster" there. Panel Op. 10. In *Mi Familia*, the membership organization had 1,000 members that "include voters who are naturalized citizens." 29 F.4th at 708. The members faced a "realistic danger of sustaining a direct injury" because an overzealous county recorder could use a broad "reason to believe" standard to question voters' citizenship and affect voters' registration status upon "potentially arbitrary suspicion of [the] county recorder." *Id.*; *accord Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014) (applying "realistic danger" analysis). The "threats"

to the "naturalized citizens" members in *Mi Familia* were in part because a federal database that county recorders used did not have "updated naturalization records," putting naturalized citizens particularly at risk. *Id.* It was no barrier to standing that no county record had yet enforced the law because the substantially imminent risks to the members remained. *See id.*

Here, CNA/NNU have 250,000 members nationally and 115,000 specifically in California, a focal point of DHS's Initiative that intimidates voters and those assisting and mobilizing voters. "Many of these individuals are naturalized citizens or citizens who live in mixed-status households"—two categories that DHS does not contest are much more likely to be erroneously targeted—and CNA/NNU specifically detail the experiences of four members who are willing to come forward despite their fear, though CNA/NNU is aware that these fears are widely shared. *See* Panel Op. 9. This far exceeds the membership organization scale and evidence put forth in *Mi Familia*. CNA/NNU's members also face a materially indistinguishable "realistic danger of sustaining a direct injury" as in *Mi Familia*: the government has a faulty set of data and processes for targeting a person, there is a high likelihood of overzealous enforcement based on prior DHS enforcement actions, and CNA/NNU's broad membership base has "precisely the types of people the Initiative has already targeted." *Id.* 10. DHS cannot establish that the panel created non-

uniform circuit precedent by faithfully applying *Mi Familia Vota* to uphold standing for an even clearer case of realistic danger.

The panel additionally concluded that "Plaintiffs have clearly shown that the Federal Defendants' conduct chills citizens' election-related activities and presents 'a real and immediate threat of future injury' to their legally protected interest in participating in the election." *Mayes*, 186 F.4th at 635–36. CNA/NNU have established a "'chill' to plaintiffs' 'voter-mobilization activities'" that "is an injury-in-fact" in the voter-intimidation context. Panel Op. 9-10 (quoting *Mayes*, 186 F.4th at 635–36). The panel opinion correctly concluded that the district court's significant findings that DHS's door-knocking voter eligibility interrogations—concededly involving U.S. citizens, at the height of electoral activity, and widely publicized and sensationalized DHS operations—and the established DHS surveillance of voters and voter-assistance organizations would result in "the precise harm at issue in an intimidation case under VRA Section 11(b):" the "fear and unease experienced by those subjected to intimidatory conduct." Panel Op. 13.

Because of the reasonable fear DHS creates, CNA/NNU members "have stopped engaging in election-related activities" to lessen their risks of coercive encounters with DHS agents. It is well-established that taking such "affirmative steps to avoid the risk of harm" are cognizable. *Meese v. Keene*, 481 U.S. 465, 473-75 (1987); *accord DHS v. League of Women Voters*, 2026 WL 2879700, at *2 (U.S.

Sept. 25, 2026) (reaffirming *Meese* outside First Amendment context). The panel opinion's decision is consistent with these precedents.

DHS also cannot show that the panel opinion clearly conflicts with Supreme Court standing precedent. The panel correctly held (Panel Op. 12) that the standing facts here are unlike those deemed speculative in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). There, standing failed because the plaintiffs challenged the abstract authorization of a government surveillance program without any clear ground facts, so they were left with "highly speculative" assumptions about the program with "no actual knowledge" of its scope or application. *Id.* at 410-13. Here, however, CNA/NNU have established several core components of DHS's Initiative here, that DHS does not meaningfully contest and that puts CNA/NNU at substantial risk and in fear. *See supra* Background. Moreover, unlike in *Clapper*, the ongoing DHS operations producing these credible threats in no way depend on pre-authorization from "independent [judicial] decisionmakers" or "guesswork as to how [they] will exercise their judgment." 568 U.S. at 1150. DHS cannot establish that the panel opinion's principled distinction of *Clapper* presents any conflict with that decision.

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is also inapposite. As the panel opinion observed, here the harms arise from an established Initiative by DHS to surge specific types of operations, in specific places, especially likely to wrongly target identifiable groups of people. Panel Op. 11. This is the type of "policy and

practice" of violations that is distinct from *Lyons*. *See id.* (citing *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012)). CNA/NNU have established that it is likely to be erroneously swept into these operations and is additionally reasonably fearful from the highly visible and publicized nature of the operations explicitly meant to "'send a signal' in the words of Acting Deputy Attorney General Trent McCotter, that federal personnel will coercively target suspected illegal voters, including naturalized citizens who may have voted before naturalization, based on inaccurate data." Panel Op. 13. As the panel opinion recognized, "unlike in *Lyons*" and like in *Vasquez Perdomo v. Noem*, the scale of DHS's operations are at a policy or at least a pattern level and CNA/NNU's members "here cannot escape future injury by avoiding unlawful activity. There is no predicate action that [they] would need to take, other than simply going about their lives, to potentially be subject to" the intimidation operations. 148 F.4th 656, 675 (9th Cir. 2025); *accord* Panel Op. 11.

***Scope of injunction***: The panel opinion also faithfully applied this Court's most relevant scope of injunction decisions and honored the district court's "considerable discretion" to "tailor[] [the] remedy" to "the specific harm alleged." Panel Op. 19. As previously explained, the district court's injunction imposed three narrow conditions on DHS interrogation operations that can, and do, otherwise continue unabated. While DHS complains that the injunction bars operations

involving U.S. citizens or individuals it should "reasonably know" are U.S. citizens, that type of "reasonably should know" requirement is drawn directly from the injunction this Court upheld in *Index Newspapers LLC v. United States Marshals Service*, 977 F.3d 817, 841 n.3 (9th Cir. 2020).

The panel opinion is also consistent with *Trump v. CASA*, 606 U.S. 831 (2025), which barred the type of universal injunctions that the district court's injunction categorically is not. As the panel opinion reasoned, unlike *CASA* "the district court's injunction applies to a narrowed set of states specific to CNA/NNU membership and Surge operations." Panel Op. 20. There, the Supreme Court permitted the lifting of an injunction "only to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA*, 606 U.S. at 861. The injunction here comports with that limitation: as the panel stated, the injunction applies only in the states where CNA/NNU have members and DHS has announced its violative surge operations, and only until the polls close. Panel Op. 20-21. There is no way to narrow the injunction and still afford CNA/NNU's members their complete relief. Here, "the record is abundant with evidence that Surge policies encourage rapid verification and widespread deployment against the population that includes the CNA/NNU's members." *Id*. at 13. The relief is therefore fully consistent with the complete-relief principle and DHS cannot establish a clear conflict.

## CONCLUSION

The Court should deny rehearing en banc.

Respectfully submitted,

October 30, 2026

*/s/ Jessica Marsden*
Jessica Marsden
*Counsel of Record*
Geoffrey Curfman
PROTECT DEMOCRACY PROJECT
82 Nassau St., #601
New York, NY 10038
(202) 579-4582

Beau Tremitiere
PROTECT DEMOCRACY PROJECT
300 Center Ave, Suite G-251
Superior, CO 80027
(202) 579-4582

Hayden Johnson
Zachary West
Ashley Fox
Jane Bentrott
PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave NW, Suite 163
Washington, DC 20006
(202) 579-4582

Benjamin R. Farley
Imani Franklin
NATIONAL IMMIGRATION LAW CENTER
PO Box 34573
Washington, D.C. 20043
(213) 639-3900

Elizabeth B. Prelogar
COOLEY LLP
1299 Pennsylvania Ave NW

Washington, DC 20004
(202)776-2076

Anna M. Stapleton
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2750

*Attorneys for Plaintiffs-Appellees California Nurses Association, National Nurses United, and Voto Latino Foundation*

David Chiu
Yvonne R. Meré
Mollie M. Lee
Sara Eisenberg
Michael A. Keough
Joel F. Wacks
CITY AND COUNTY OF
SAN FRANCISCO
City Hall, Room 234
Fox Plaza, 1390 Market Street, 7th Fl.
San Francisco, California 94102
(415) 554-4655

*Attorneys for Plaintiff-Appellee City and County of San Francisco*

Tony LoPresti
Kavita Narayan
Meredith A. Johnson
Bill Nguyen
COUNTY OF SANTA CLARA
70 W. Hedding Street, East Wing
9th Floor
San José, CA 95110
(408) 299-5900

*Attorneys for Plaintiff-Appellee*

*County of Santa Clara*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(4)-(6) because this brief contains 2980 words. This brief complies with the typeface and type-style requirements of Rule 27(d)(1)(E) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

October 30, 2026

*/s/ Jessica Marsden*
Jessica Marsden

*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I, Jessica Marsden, hereby certify that on October 30, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. A true and correct copy of this brief has been served via the Court's ACMS system on all counsel of record.

*/s/ Jessica Marsden*
Jessica Marsden

*Attorney for Plaintiffs-Appellees*